THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

```
_____
                                )
VERIZON SERVICES CORPORATION,   )
et al.,                         )
                                )
          Plaintiffs,           )
                                )
v.                              )      Civil Action No. 06-0682
                                )
VONAGE HOLDINGS CORPORATION,    )
et al.,                         )
                                )
          Defendants.           )
_____)
```

## CLAIM CONSTRUCTION OF THE PATENTS-IN-SUIT

This patent infringement case involves Voice over Internet Protocol ("VoIP"), which is offered by companies such as Verizon and Vonage to provide telephone (voice) services to customers via their home or business Internet connection.  VoIP involves converting voice sounds into digital format, assembling the resulting digital data into multiple packets, and transmitting those packets over the Internet (intermixed with other Internet traffic) – using the "protocols" that govern Internet communications.

The seven Verizon patents at issue cover several technologies that are essential for successfully implementing a commercial VoIP telephone service.  The patents fall into three general categories: (1) two network patents (commercial scale

VoIP telephony), (2) a public wireless/cordless handset patent and (3) four feature patents (e.g., voicemail in VoIP).

In making a claim construction, the law requires that the Court give the claim language at issue the meaning the words would have to one of ordinary skill in the art, using the entire patent as context, but understanding the distinctive roles of the specification and claims.  Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).

The Phillips case sets forth the basic rules for claim construction in patent cases.  The starting point is to give words in patent claims their ordinary meaning as understood by one of ordinary skill in the art.  The intrinsic evidence (i.e., the specification and the prosecution history) of the patent is useful in determining the meaning of the words in patent claims. Limitations from the specification should not be imported into the claims.  Claims are not limited to the preferred embodiment disclosed in the specification.  The prosecution history may inform the meaning of the words in patent claims.  Extrinsic evidence, such as dictionaries, may not be used to contradict the meaning of the claim terms as evidenced by the specification and file history.

**U.S. Patent Nos. 6,137,869 and 6,430,275**

The asserted claims 1, 2, 4, 8-11, and 16 of the '869 patent

2

and claims 1, 2, 4, 8-11, 14, and 28 of the '275 patent are method claims that recite particular steps for "session management," which provide authentication, validation, pricing, and authorization from a ULO to a session control object (a gateway) and maintain a record of the call initiation, progress, termination, and pricing in the ULO.  While various exemplary embodiments are described and illustrated in the specification and drawings as preferred, the invention of the Network Patents is not limited to those specifically disclosed embodiments.

<u>Construction of Claim 1 of the '869 Patent</u>

Claim 1 of the '869 patent recites:

In a hybrid communication network comprising a circuit switched network and a packet switched network connectable to terminals for communication therebetween, a method of communication session management comprising the steps of:

a) inputting from a calling one of said terminals an address of a called one of said terminals to initiate a communication session therebetween;

b) authenticating, account validating, pricing, and authorizing a communication session between said calling and called terminals from a unitary logical object connected to the packet switched network, and signaling said authorization to a session control object connected to said circuit switched and packet switched networks;

c) initiating said authorized communication session via said session control object;

d) maintaining by said unitary logical object of a record of the initiation, progress, pricing and termination of said communication session on a substantially real time basis; and

3

e) determining the address of a lowest cost gateway between said switched network and said packet switched network prior to initiating said connection.

The dispute between the parties is the proper construction of steps (b), (d), and (e) of claim 1 of the '869 patent.

This first portion of step (b) should be construed as follows:

Authenticating with respect to a calling terminal, checking the account status of the calling terminal to determine whether the current call can proceed, performing processes necessary to evaluate the price of a call, and authorizing a communication session between the calling and called terminals from a single logical database (including related call processing logic and supporting infrastructure) connected to a packet switched network.

The '869 patent specification confirms what the inventors intended by the terms "a unitary logical object," "account validating . . . from a unitary logical object," and "pricing . . . from a unitary logical object."

The term "a unitary logical object" should be construed as follows:

A single logical database that includes related call processing logic and supporting infrastructure (e.g., servers and networks) and manages customer authentication, authorization, account validating, and usage pricing.

The specification statement, "[b]y having a single logical database which is managing customer authentication, authorization, and usage pricing for the overall network, a

4

transaction-based approach to updating data is possible,"
confirms the definition.  (Id. at col. 5:39-42.)

The term "account validating . . . from a unitary logical
object" should be construed as follows:

> Checking the account status of the calling terminal to
> determine whether the current call can proceed using a
> single logical database (including related call
> processing logic and supporting infrastructure).

The ULO may entail communication among instances of the
distributed database for "verifying the account status of the
caller and optionally setting a limit on the duration or cost of
the call depending on account status and/or balance."  (Id. at
col. 17:66-18:2.)  Account validation may include checking the
balance.

Claim 31 of the '275 patent (which has an identical
specification to the '869 patent) recites the steps of validating
the account and, separately, determining the balance existing in
an account.  Under the doctrine of claim differentiation, claim
31 supports the conclusion that validating the account and
determining the balance in the account are two separate steps.

The term "pricing . . . from a unitary logical object"
should be construed as follows:

> Accessing and/or using information related to the
> charge for a call, such as usage tracking, decrementing
> minutes, or optionally calculating or communicating the
> charge for these minutes, for a communication session
> between a calling and called terminal from a unitary
> logical object.

The ULO is responsible for accepting usage recording data from a gateway, and decrementing the minutes used from the available minutes, optionally pricing that usage and optionally decrementing the priced amount from a customer's existing balance, and then logging the information.  ('869 patent, col. 12:49-53.)  The ULO is invoked in order to receive authorization to proceed with the call.  This may optionally set a limit on the duration of the call depending upon the account status and/or balance.  The pricing of the call may be communicated to the caller.  (Id. at col. 17:64-18:4.)  As the '869 patent states, "the C3 object may return the pricing algorithm for the usage to C2 . . . [and] [t]his is particularly important when C2 is owned by a different company than C3 and the user wants to know the overall rates that will be charged prior to completing the call." (Id. at col. 10:8-13.)  The specification repeatedly uses the term "usage" in conjunction with pricing to indicate that pricing is based on usage (or minutes).  Pricing can be based solely on the duration of a call, for example, by decrementing minutes; pricing can include a rate of $0.0 (free) or infinity (blocked call) per minute.

Step (d) of the '869 patent should be construed as follows:

Maintaining by a single logical database, which
includes related call processing logic and supporting
infrastructure, a record of initiation, progress, the
processes being performed that are needed to evaluate
and record the price of a call, and termination of a
communication session, on a substantially real time

6

basis.

The term "unitary logical object" was discussed above.  The
parties also dispute the meaning of the phrases: "maintaining by
said unitary logical object of a record of the . . . progress,"
"maintaining by said unitary logical object of a record of the .
. . pricing," and "on a substantially real time basis" in step
(d) of claim 1.

The term "maintaining by said unitary logical object of a
record of the . . . progress" should be construed as follows:

> Maintaining by a single logical database, which
> includes related call processing logic and supporting
> infrastructure, a record of call status (e.g., setup,
> in progress, termination) that can be used for billing,
> usage tracking, and other purposes.

In telephony, "progress of a call" has a specific meaning, i.e.,
the stages of a call, from dialing to ringing to the maintaining
of the open line, all the way to termination.  The Network
Patents disclose an embodiment in which the ULO tracks a call in
real time, as an anti-fraud measure.  ('869 Patent at col.
9:49-51.)  This information could be used to prevent multiple,
simultaneous calls, but that is just an option; it is not a
requirement of claim 1.  Further, construing "maintaining by said
unitary logical object of a record of the . . . progress" to
require that only one call be in progress would exclude the
alternative embodiment of allowing multiple, simultaneous calls.
(Id. at 5:24-28.)  A claim construction which excludes a

preferred embodiment disclosed in the specification is generally

incorrect.   The term "maintaining by said unitary logical

object of a record of the . . . pricing" should be construed as

follows:

> Recording by a unitary logical object results of
> information related to the charge for a call, such as
> information about usage tracking, decrementing minutes,
> or optionally calculating or communicating the charge
> for a communication session between a calling and
> called terminal.

The following passages from the specification confirm that the

inventors intended this definition.

> When the call is finished, the gateway will report
> usage data to the database for billing purposes.  (Id.
> at 5:5-7.)

> After the completion of the call, the C3 object is also
> responsible for accepting usage recording data from C2,
> pricing the usage, and decrementing the priced amount
> from a customer's available balance.  (Id. at
> 10:17-20.)

When performing minimal pre-call pricing and maximal

post-call pricing, the ULO need only record an indication of the

requirement to price the call, for example, when the ULO does not

pass back pricing information to the session control object or

when the duration of a call is needed to price the call.  (See,

e.g., id. at 9:60-64; 17:66-col. 18:2.)  The post-call pricing

can happen in substantially real time as "the usage statistics

relating to the completed call, including pricing, are available

for virtually immediate billing."  (Id., Abstract.)

The term "on a substantially real time basis" should be

8

construed as follows:

> Near enough in time to the occurrence of the event
> about which data are recorded to fulfill the system's
> functions of reducing opportunities for fraud

The phrase at issue is an ordinary one, using a term
"substantially real time" that necessarily takes its meaning from
the particular context of the patents, here the indicated
purposes of maintaining certain records in "substantial" real
time.  The key relevant object of the '869 patent is to reduce
the potential for fraud – though that is not the sole object of
the '869 patent, which discloses solutions that, "for example,
relate to scalability, billing, fraud protection, and speed of
service."  (Id., Abstract.)

> The theory behind bundling usage recording, pricing,
> and authorization into one logical object is to
> significantly reduce the potential for fraud when the
> system is widely deployed.  By having a single logical
> database which is managing customer authentication,
> authorization, and usage pricing for the network, data
> synchronization is facilitated, and opportunities for
> fraud are minimized.  (Id. at 13:62-14:1.)

Reducing the potential for fraud does not mean eliminating or
preventing it, for there are many models for charging subscribers
for services and different VoIP providers have different
tolerances for fraud, for example, based on their cost of
service, focus on subscriber ease of use, etc.  The measures used
to deal with fraud can be adjusted by VoIP providers to suit
their financial needs, based on a cost-benefit analysis that

weighs the cost of implementing fraud prevention against saved

costs attributable to fraud prevention measures.

Step (e) should be construed as follows:

given at least two gateways, determining an address of
the gateway that would reduce PSTN costs by directing a
call to a gateway that has the minimal connection cost
to the PSTN endpoint by maximizing a use of the packet
switched network in an effort to minimize the use of
the PSTN.

Set forth below are instances in the '869 patent specification

that provide support for what the inventors intended by the

phrase "a lowest cost gateway."

The C1 Object: The Internet Telephony Gateway Directory
manages which E.164 addresses (telephone numbers) are
served within the terminating footprint of a particular
ITG.  The management of the terminating footprint may
be in the form of NPA-NXX ranges which relate to an IP
address for a single ITG [Internet Telephony Gateway].
When queried with a 'called' telephone number by the PC
Call Control Object, the C1 object returns the IP
address of the Internet Telephony Gateway (ITG) that
serves the called telephone number.  (<u>Id.</u> at 12:45-52.)

<u>Construction of Claims 1 and 28 of the '275 Patent</u>

Claim 28 contains the same disputed terms as claim 1 of the

'275 and '869 patents, and the Court construes the terms present

here as have been construed above.

**U.S. Patents Nos. 6,104,711 and 6,282,574**

<u>Construction of Claim 20 of the '711 Patent</u>

Claim 15 recites:

A method comprising:

receiving a name translation request at a server
coupled to a public packet data network;

executing a conditional analysis in response to the
name translation request;

if the conditional analysis produces a first result,
translating a name included in the name translation
request into a first destination address;

if the conditional analysis produces a second result,
translating the name included in the name translation
request into a second destination address; and


transmitting a response message containing the first or
the second destination address to a calling device for
use in establishing communication at least partially
through the public packet data network.

Claim 20, which is dependent on claim 15, recites:

A method as in claim 15, wherein:

the first and second destination address includes a
numeric Internet Protocol address; and

the second destination address further includes
information relating to call routing via a public
switched telephone network.

> a.  Receiving a Name Translation Request at a
>     Server Coupled to a Public Packet Data
>     Network

This step should be construed as follows:

receiving a translation request for an identifier or
representation of a party for the purpose of telephony
communication at a computer system that provides
services to other computer systems over a network and
that is coupled to a packet-switched data network
accessible by and usable by the public for providing
packet data transport.


The term "name" should be construed as follows:

11

> an identifier or representation of a party for the
> purpose of telephony communication.

The specification confirms that the inventors intended this construction.  (See, e.g., '711 patent, col. 2:39-3:7; see also col. 8:47-59.) "Name" refers to the called party, not the called device.  The inventors recognized that the calling party is not placing the call in an attempt to reach the called party's phone, but rather, the called party, wherever the called party may be available.  (See, e.g., id. at 5:56-63.)  A "name" will likely be selected because it is easier to remember than an IP address. (See, e.g., id. at 2:39-46.)

> The term "server" should be construed as follows:

> a computer system, such as one or more computers and/or
> devices, that provides services to other computer
> systems over a network.

The specification confirms that the inventors intended this construction.  (See, e.g., id. at 1:43-50; 7:31-42.)  All that claim 20 requires is that the server receive the request and be coupled to a public packet-data network.  There is no requirement in either the claims or the specification of the '711 patent that the server be a single computer.  Nor is there any requirement that the server receiving the name translation request be the same device that executes the conditional analysis, or that performs any other step of the claimed method.  Neither is there any requirement that the server be directly coupled to a data

storage system.  Although several examples appear in the
specification in which a single server does execute the
conditional analysis, such limitations may not be read into the
claims.

The term "public packet data network" should be construed as
follows:

> a packet-switched data network that is accessible by
> and usable by the public for providing packet data
> transport, such as the Internet, where the network
> transports packets of data over a non-dedicated circuit
> to a destination, and each packet includes the source
> and destination address.

The specification confirms that the inventors intended this
construction. (Id. at 1:11-2:38; 6:52-67; 8:38-41.)

The term "name translation request" should be construed as
follows:

> a query for translation of a name into routing
> information for a public packet data network.

The specification confirms that the inventors intended this
construction.  (Id. at 5:12-23; 6:2-6; 6:40-43; 8:52-59;
8:66-col. 9:3; 9:4-12; 9:56- 10:8; 11:66- 12:9; 12:64- 13:11.)
There is no requirement in the claims that the translation be
directly from one protocol to another.  Nor is there any
requirement that the translation be from a higher to a lower
level protocol.  Although several examples appear in the
specification demonstrating a translation from a higher to a

lower level protocol, such limitations are not properly read from the specification into the claims.

> b.    Executing a Conditional Analysis in Response to the Name Translation Request

This step should be construed as follows:

> executing a determination that generates a result based on a condition in response to a query for translation of a name into routing information for a public packet data network.

The term "conditional analysis" should be construed as follows:

> a determination that generates a first result based on a first condition or data, and a second result based on a different condition or data.

The specification confirms that the inventors intended this construction.  (<u>Id.</u> at 9:16-21; 10:59-63.)  For example, a conditional analysis can return different IP addresses at different times of the day, week, or month.  (<u>Id.</u> at 5:51-55; col. 8:47-57; col. 14:16-24; col. 9:12-15; col. 10:62-65; col. 13:12-22.)  While several examples appear in the specification in which the conditional analysis is based upon the called party's preferences, there is no requirement in either the claims or the specification that such a conditional analysis be based on the called party's needs or preferences.  Indeed, the specification gives at least one example of a conditional analysis that is not based upon the called party's preferences, wherein the "system can also be programmed to block access to a particular IP address

14

unless the caller can provide a special access code."  (<u>Id</u>. at 15:66– 16:5.)

      c.    Transmitting a Response Message Containing the First or the Second Destination Address to a Calling Device for Use in Establishing Communication at Least Partially Through the Public Packet Data Network

This step should be construed as follows:

    transmitting a response message containing the first or the second destination address to a calling device for use in enabling two telephony devices to transmit or receive voice signals therebetween at least partially through a packet-switched data network accessible by and usable by the public for providing packet data transport.

The term "establishing communication" should be construed as follows:

    enabling two telephony devices to transmit or receive voice signals therebetween.

The specification confirms that the inventors intended this construction.  (<u>Id</u>. at 3:14-32; 4:66– 5:2; 7:52-55; 9:23-25.) The '711 and '574 patents describe two different types of signals: the signaling communications ("e.g., DTMF dialing signals, detect line status and call progress signals") used to set up the call; and the voice communications ("the two-way protocol processing to send and receive compressed, digitized voice data in TCP/IP packet form over the network") used to carry on a conversation.  (<u>Id</u>. at 8:27-33; 13:63-14:16.)  As used in the specification, the term "establishing communication" clearly

refers to establishing voice communications at least partially through the Internet.

<u>Construction of Claim 27 of the '574 Patent</u>

Claim 26 recites:

A method comprising:

receiving a name translation request at a server coupled to a public packet data network;

translating a name included in the request into a destination telephone number associated with a name included in the request; and

transmitting a reply containing both the destination telephone number and a packet data network address of a telephone gateway coupled between the public packet data network and a telephone network through the public packet data network to a calling device.

Claim 27, which is dependent on claim 26, recites:

A method as in claim 26, wherein the address is an Internet Protocol address.

> a.   Receiving a Name Translation Request
>      at a Server Coupled to a Public Packet
>      Data Network

The first step of "receiving a name translation request at a server coupled to a public packet data network," including the terms "name translation request," "server," and "public packet data network," has the same definition as provided above with regard to the '711 patent.  The construction of the second step, "translating a name . . . into a destination telephone number associated with a name included in the request," including the terms "name" and "request," should be clear from the above

definitions.

      b.   Reply

The term "reply" should be construed as follows:

a message which contains either the first or the
second IP address and a telephone number to a
calling device capable of establishing a phone
call at least partially through the public packet
data network.

The terms "response" and "reply" are used somewhat interchangeably in the Voit '711 and '574 patents.  The difference is that "response" as used in claim 15 (and thus dependent claim 20) of the '711 patent includes a first or second destination address, whereas a "reply" as used in claim 26 (and thus dependent claim 27) of the '574 patent includes both a telephone number and a packet data network address of a telephone gateway.  Claim 27 requires the packet data network address to be an IP address.  The claim language simply requires that the "reply" be transmitted through the public packet data network (such as the Internet) to a calling device.  There is no requirement in the claim that the reply be generated by the same server that received the name translation request as discussed above with reference to the first step of the '711 patent.

**U.S. Patent No. 6,359,880**

Construction of Claim 1 of the '880 Patent

Claim 1 of the '880 patent recites:

17

A method comprising:

registering a wireless telephone terminal in a
localized wireless gateway system;

transmitting registration data identifying the gateway
system from the localized wireless gateway system to a
home location register database through a public packet
data communication network;

receiving a request from a calling computer coupled to
the public packet data communication network for a call
to the wireless telephone terminal;

in response to the request, accessing the home location
register database and obtaining a packet data address
for the localized wireless gateway system;

using the address to set up a voice communication
through the public packet data communication network
and the localized wireless gateway system between the
calling computer and the wireless telephone terminal.

> a.    Registering a Wireless Telephone Terminal
>        in a Localized Wireless Gateway System

The "register" step should be construed as follows:

associating a telephone, that communicates through
radio signals to provide two way voice communications,
with a system, which is fixed to a limited or local
area and which provides wireless service coverage
within that local area.

The term "registering" should be construed as follows:

associating devices so that the devices can
communicate with each other.

The '880 patent specifically discusses devices communicating with

each other.  ('880 patent, col. 16:20-22; col. 16: 49-57.)  The

claim language does not require any specific association between

devices.  It requires only that at least one device communicate
with at least one other device.  Thus, registering is an
association that enables devices to interact with each other.

The term "wireless telephone terminal" should be construed
as follows:

> a telephone that communicates through radio
> signals to provide two way voice communications.

The claim language, when read in the context of the
specification, makes it clear that a wireless telephone terminal
enables wireless communications using radio signals and, further,
that the wireless telephone terminal is required only to
communicate with at least one base station transceiver.  (Id. at
5:11-18.). The specification describes using the wireless
telephone terminal at multiple locations or a single location.
(Id. at 10:51-60.)

The term "localized wireless gateway system" should be
construed as follows:

> a system which is fixed to a limited or local
> area and which provides wireless service coverage
> within that local area.

The specification supports this construction as it describes a
gateway system that can provide communication within a single
location (e.g., office complex, airport, shopping center, hotel,
etc.). (Id. at  5:30-38, 50-59; 23, 56-61.)   The claim language
does not require that the gateway system perform any particular

functions.  It requires only a gateway system.

   b. Transmitting Registration Data Identifying the
     Gateway System from the Localized Wireless Gateway
     System to a Home Location Register Database
     Through a Public Packet Data Communication Network

The "transmitting" step should be construed as follows:

transmitting identification data, such as the location
and identifier of a terminal or a wireless gateway
system, over a public network such as the Internet from
a system, which is fixed to a limited or local area and
which provides wireless service coverage within that
local area, to a database that contains registration
data and the identity of systems registering terminals.

The term "registration data identifying the gateway system"
should be construed as follows:

identification data of a terminal or a gateway system.
The claim makes it clear that the registration data identify the
gateway system.  As part of transmitting registration data for
itself, the gateway system can also transmit, but is not required
to transmit, identification data for the wireless telephone
terminal.  (Id. at 10:61-11:3.; 16:66-17:1; 17:30-36.)
Registration data is transmitted to a home location register
which is a database that contains registration data and the
identity of registering terminals.

   c. Receiving a Request . . . for a Call to the
     Wireless Telephone Terminal

The term "receiving a request . . . for a call to the

20

wireless telephone terminal" should be construed as follows:

> receiving an identifier for processing a telephone call
> to a telephone that communicates through radio signals
> to provide two way voice communications.

(Id. at 20:48-21:53; 22:24-23:2.)  The claim does not specify

where the request is received, it only requires that a request

is, in fact, received.

> d.   In Response to the Request, Accessing the Home
>      Location Register Database and Obtaining a Packet
>      Data Address for the Localized Wireless Gateway
>      System

The "accessing" step should be construed as follows:

> in response to receiving an identifier, accessing a
> database that contains registration data and the
> identity of systems registering terminals and obtaining
> a location or address for a system which is fixed to a
> limited or local area and which provides wireless
> service coverage within that local area.

The only term not discussed above that appears to be in dispute

is "obtaining a packet data address for the localized wireless

gateway system," which should be construed as follows:

> obtaining a location or address of a system which
> is fixed to a limited or local area and which
> provides wireless service coverage within that
> local area.

The specification discusses a calling party initiating a call and

receiving an "address" for a gateway servicing a wireless

telephone terminal.  ('880 patent, col. 21:13-56.)  The address

is used for routing a call.  (Id.)


**U.S. Patent Nos. 6,128,304 and 6,298,062**

Construction of Claims 16 and 19 of the '304 Patent

Claim 16 recites:

A method for providing network-resident communication services in a packet based network, comprising the steps of:

receiving an incoming call addressed to a particular terminal end-point in the packet based network;

determining whether to send the incoming call to the terminal end-point or one of a plurality of network-resident service nodes based on predetermined data;

sending the incoming call to the network-resident service node when the predetermined data identifies the network-resident service node;

sending the incoming call to the terminal end-point when the predetermined data identifies the terminal end-point;

determining whether the terminal end-point is available to receive the incoming call;

if the terminal end-point is not available, identifying one of the network-resident service nodes to receive the incoming call; and routing the incoming call to the identified network-resident service node.

Claim 19 recites:

A method for providing network-resident communication services in a packet based network, comprising the steps of:

receiving an incoming call addressed to a particular terminal end-point;

accessing a call management database to determine whether the terminal end-point is linked with a corresponding service node for initial call presentation;

22

> if the terminal end-point is linked with the service
> node for initial call presentation, routing the
> incoming call to the service node; and
>
> if no service node is linked with the terminal
> end-point, routing the incoming call to the terminal
> end-point.

    a.    A Method for Providing Network-Resident
             Communication Services in a Packet Based Network

The preamble of "[a] method for providing network-resident communication services in a packet based network" should be construed as follows:

> a call being terminated in the packet based network
> (i.e., the call is connected to a terminal end-point or
> a service sub-system in the packet based network, such
> as the Internet).

    b.    Receiving an Incoming Call Addressed to a
             Particular Terminal End-Point

This step in claims 16 and 19 should be construed as follows:

> receiving an incoming call addressed to a particular
> device on the packet based network to which the call is
> directed, and at which the call is presented and/or
> proceeds, such as a called device.

The claim language does not require that the calling party know the actual identification of a particular terminal end-point. Rather, the claim language requires only directing a call to a terminal end-point (e.g., a device that allows voice communication).

    c.    Determining Whether to Send the Incoming Call to
             the Terminal End-Point or One of a Plurality of

Network-Resident Service Nodes based on
Predetermined Data.

This step in claims 16 should be construed as follows:

determining whether to send the incoming call to a
device on the packet based network to which the call is
directed (and at which the call is presented and/or
proceeds) or one of a plurality of points on the
network that provides telephone services based on
information associated with a called party which is
specified at some time prior to presentation of the
call.

The term "network-resident service node" should be construed
as follows:

a system located at a point on the network that
provides telephone services, such as voicemail,
automated attendant, personal assistant, or call
forwarding.

A network-resident service node may actually dispose of the call,

such as at a voicemail platform.  (Id. at 6:8-12.)  In addition,

the network-resident service node may include service logic that

processes the call and routes it to a terminal end-point.  (Id.

at 7:7-14.)

The term "predetermined data" should be construed as

follows:

information associated with a called party, where the
information is specified at some time prior to
presentation of the call.

Construction of Claims 14 and 27 of the '062 Patent

Claim 14 recites:

A method for disposing of incoming calls in a packet
based network, comprising:

24

receiving one of the incoming calls addressed to a
particular terminal end-point;

routing the one incoming call to the terminal
end-point;

determining whether the terminal end-point is
unavailable to receive the one incoming call by
accessing a configuration database to determine if the
terminal end-point is associated with a
network-resident service sub-system, the accessing
being performed a preselected amount of time after
routing the one incoming call to the terminal
end-point;

if the terminal end-point is unavailable, determining
an appropriate network-resident service sub-system to
receive the one incoming call; and

routing the one incoming call to the appropriate
network-resident service node.


Claim 27 recites:

A method for disposing of incoming calls in a packet
based network, comprising:

receiving an incoming call addressed to a particular
terminal end-point;


accessing an initial call presentation database to
determine an appropriate destination for the incoming
call;

routing the incoming call to the terminal end-point, if
the terminal end-point is the appropriate destination
for the incoming call;

routing the incoming call to a service sub-system, if
the service sub-system is the appropriate destination
for the incoming call;

determining whether the terminal end-point is
unavailable to receive the incoming call, if the call
is routed to the terminal end-point;

determining an appropriate network-resident service
sub-system to receive the call, if the terminal
end-point is unavailable; and

routing the incoming call to the appropriate
network-resident service sub-system.

     a.   Determining Whether the Terminal End-Point is
Unavailable to Receive the One Incoming Call by
Accessing a Configuration Database to Determine if
the Terminal End-Point is Associated with a
Network-Resident Service Sub-System, the Accessing
Being Performed a Preselected Amount of Time After
Routing the One Incoming Call to the Terminal
End-Point

This step of claim 14 should be construed as follows:

the configuration database is accessed after a
preselected amount of time after the call was routed to
the terminal end-point, thereby indicating that the
terminal end-point was unavailable, and the
configuration database is accessed to determine if the
terminal end-point is linked to a network-resident
service sub-system.


The term "configuration database" should be construed as

follows:

one or more sets of structured data which are
accessed for determining how the call should
be processed.

A configuration database may include one or more association or

look-up tables and provide information on how to direct the call

toward a terminal end-point or service sub-system.  (Id. at

10:20-28; see also 4:59-63; 5:5-33; Fig. 3.)  The actual claim

language does not preclude a configuration database from using

other data storage methods.  The '062 specification states that

"some other data storage method may alternatively be used." (Id.

26

at 6:1-6.)   Further, the configuration database as claimed is not limited in the type of information that it stores, and can include both initial call presentation routing information and/or unavailable terminal routing information.

The term "network resident service sub-system" of claim 14 or "service sub-system" of claim 27 should be construed as follows:

> a system on the network that provides telephone
> services such as a voicemail platform.

While voicemail is provided as a specific example of a service sub-system, the '062 patent clearly contemplates other types of services.  (Id. at 2:48-51; col. 6:13-15.)  This interpretation is consistent with the specification of the '062 patent because, for example, the association tables link terminal end-points to service sub-systems.  (Id. at 5:21-45.)  It is clear from reading the specification of the '062 patent as a whole that the term "network-resident service node" refers to a processing location that determines how to dispose of a call.  In contrast, a service sub-system receives an incoming call and provides a service that is resident on the network such as voicemail or other services. (Id. at 6:13-22.)

Based on the analysis set forth above, the Court adopts the foregoing constructions of the disputed claims.  Counsel shall promptly contact the Court if this Order fails to address all claims that are in dispute, and

27

It is so Ordered.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 12, 2007